MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@hpl.law
**HANKIN PATENT LAW, APC**
11414 Thurston Cir.
Los Angeles, CA 90049
Telephone: (310) 979-3600

Attorneys for PLAINTIFF,
**MMAS RESEARCH LLC**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MMAS RESEARCH LLC, a Washington limited liability company,

Plaintiff,

v.

GENENTECH, INC., a Delaware corporation; GE HEALTHCARE TECHNOLOGIES INC., a Delaware corporation; BRISTOL-MYERS SQUIBB COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:26-cv-12403

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF**

1. Breach of Contract (BMS);
2. Copyright Infringement, 17 U.S.C. §§ 106, 501;
3. Copyright Management Information, 17 U.S.C. § 1202;
4. Misappropriation of Trade Secrets, 18 U.S.C. §1 836; and
5. Declaratory Relief, 28 U.S.C. §§ 2201-2202.

**DEMAND FOR JURY TRIAL**

Plaintiff MMAS RESEARCH LLC ("MMAS Research" or "Plaintiff"), for its causes of action against Defendants GENENTECH, INC. ("Genentech"), GE HEALTHCARE TECHNOLOGIES INC. ("GE HealthCare"), BRISTOL-MYERS SQUIBB COMPANY ("BMS"), and DOES 1 through 10, inclusive (collectively, "Defendants"), alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under the Copyright Act, 17 U.S.C. § 101 et seq.,

including 17 U.S.C. §§ 501 and 1202; the Defend Trade Secrets Act, 18 U.S.C. § 1836. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), and 18 U.S.C. § 1836(c); supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a); and jurisdiction over the declaratory claim under 28 U.S.C. §§ 2201 and 2202.

2. This Court has personal jurisdiction over BMS by consent. Section 2(h) of the BMS License provides that "all disputes and litigation regarding this Agreement, its construction and matters connected with its performance shall be subject to the exclusive jurisdiction of the state and federal courts in the Central District of California," and that "[t]he Parties hereby waive any challenge to the jurisdiction or venue of the Court over these matters."

3. This Court has personal jurisdiction over Genentech, whose principal place of business is at 1 DNA Way, South San Francisco, California, and which conducts continuous and systematic business in this District. Genentech, with Roche and icometrix, conducted ILLUMINATE at United States sites under a registration stating that the study involves a U.S. FDA-regulated device product manufactured in and exported from the United States, and distributed icompanion ms to United States participants and clinicians. It has personal jurisdiction over GE HealthCare, which conducts continuous and systematic business in California, including through employees based in this State; which is the designated United States Agent for the FDA establishment registration under which icometrix lists icompanion for distribution in the United States; and which, on information and belief, owns and controls icometrix and directs the conduct alleged.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), a substantial part of the events giving rise to the claims having occurred here; under 28 U.S.C. § 1400(a); and, as to BMS, by the exclusive selection of the Central District of California in Section 2(h) of the BMS License.

## NATURE OF THE ACTION

5. Plaintiff owns the Morisky Widget. Since January 1, 2017, every administration of the MMAS-8 and MMAS-4 has been required to be performed, scored and coded through it. Each corporate Defendant is a United States pharmaceutical or medical-technology company that administered, scored or published the MMAS-8 outside the Morisky Widget in a study it sponsored, conducted or supplied: BMS in breach of a license it signed and agreed to pay for, and Genentech and GE HealthCare with no license from Plaintiff. Morisky Medication Adherence Research, LLC sold a permission for the same use over the top of Plaintiff's licenses. The patients are multiple sclerosis and chronic myeloid leukemia patients, among others, measured by methods that cannot say which medicine a patient is not taking or why, under a validation retracted on August 18, 2023.

## THE PARTIES

6. Plaintiff MMAS Research LLC is a Washington limited liability company with its principal place of business at 101 2nd St., Petaluma, California 94952. Plaintiff owns the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), U.S. Copyright Registration No. TX 8-816-517, registered December 3, 2019 (Exhibit 1), the Morisky Widget MMAS-8 and the Morisky Widget MMAS-4.

7. Defendant Genentech, Inc. is a Delaware corporation with its principal place of business at 1 DNA Way, South San Francisco, California 94080, and a member of the Roche Group.

8. Defendant GE HealthCare Technologies Inc. is a Delaware corporation with its principal place of business at 500 W. Monroe Street, Chicago, Illinois 60661, and, on information and belief, the owner of icometrix NV ("icometrix"), a Belgian company in Leuven, the developer of icompanion ms and the named collaborator on NCT05949580.

9. F. Hoffmann-La Roche Ltd ("Roche"), Basel, Switzerland, a member of the Roche Group with Genentech, is the sponsor and responsible party of record for ILLUMINATE, ClinicalTrials.gov No. NCT05949580. Roche and icometrix are not named as defendants; Plaintiff will seek leave to add them if necessary.

10. CHIESI GmbH ("Chiesi Germany"), Gasstraße 6, 22761 Hamburg, Germany, the licensee under the Chiesi License and the sponsor of TriOptimize, is not named as a defendant; Plaintiff will seek leave to add it if necessary.

11. Chiesi Poland Sp. z o.o. ("Chiesi Poland"), Al. Jerozolimskie 134, 02-305 Warszawa, Poland, a sub-licensee under the Chiesi License, and Chiesi Hellas, on information and belief the Chiesi affiliate in Greece and the sponsor of the NEXT-step study, are affiliates of Chiesi Germany. They are not named as defendants; Plaintiff will seek leave to add them if necessary.

12. GKM Gesellschaft für Therapieforschung mbH ("GKM"), Amtsgericht München HRB 65 957, Lessingstraße 14, 80336 München, Germany, is a contract research organization. It is not named as a defendant; Plaintiff will seek leave to add it if necessary.

13. Berlin-Chemie AG ("Berlin-Chemie"), Glienicker Weg 125, 12489 Berlin, Germany, the licensee under the Berlin-Chemie License, is not named as a defendant; Plaintiff will seek leave to add it if necessary.

14. Elpen Pharmaceutical Co. Inc. ("Elpen"), 95 Marathonos Avenue, 19009 Pikermi, Attica, Greece, the licensee under the Elpen License, is not named as a defendant; Plaintiff will seek leave to add it if necessary.

15. Defendant Bristol-Myers Squibb Company is, on information and belief, a Delaware corporation with its principal place of business at Route 206 & Province Line Road, Princeton, New Jersey 08543, the sponsor of SIMPLICITY, ClinicalTrials.gov No. NCT01244750, and the licensee under the BMS License.

16. Servier Affaires Médicales S.N.C. ("Servier"), 35 rue de Verdun, 92284 Suresnes cedex, France, the successor to the medical-affairs activities of Les

Laboratoires Servier under the 2016 Servier License and the licensee under the Servier License, with its affiliates Servier Pharma S.R.L. (Romania) and Servier Russia, is not named as a defendant; Plaintiff will seek leave to add it if necessary.

17. Morisky Medication Adherence Research, LLC ("MMAR") is a Nevada limited liability company whose Managing Member is Philip Morisky, located at 130 Granada Ave, Long Beach, California 90803-3251, doing business as "Adherence" at www.adherence.cc and maintaining www.moriskyscale.com. MMAR is not named as a defendant; Plaintiff will seek leave to add it if necessary.

18. The true names and capacities of DOES 1 through 10 are unknown to Plaintiff, which sues them by fictitious names and will seek leave to amend when their identities are determined. They include the incoming sponsor of NCT05949580.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff Owns the Morisky Widget

19. On November 2, 2022, Donald E. Morisky swore, in a declaration filed as Docket Entry 48 in *MMAS Research, LLC v. The Charité*, No. 2:21-cv-01406-MWF-JPR (C.D. Cal.), that he owned the copyrights "includ[ing] the Morisky Widget" and that "MMAS has no rights to or license in … the Morisky Widget copyrights," each assertion resting on a December 4, 2020 agreement.

20. On March 13, 2024, the Ninth Circuit, construing that agreement, held: "that agreement … was never finalized. MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget." *MMAS Research, LLC v. The Charité*, No. 23-55202 (9th Cir. Mar. 13, 2024) (unpublished) (Exhibit 2). The Court rejected abandonment. Plaintiff is and remains the sole owner of the Morisky Widget and of Registration No. TX 8-816-517.

### B. The Morisky Widget and the Morisky Mandate

21. The 2006 printed MMAS-8 is a paper form for a single condition or a single medication, in English only, scored by hand, producing one score. The 2017

Morisky Widget MMAS-8 is made specific to each patient's conditions and medications, in more than eighty languages, is always scored and coded in the Morisky Widget, and produces three scores: raw medication adherence, intentional non-adherence and unintentional non-adherence.

22. From January 1, 2017, every MMAS-8 and MMAS-4 test was required to be administered, scored and coded through the Morisky Widget (the "Morisky Mandate"): "Beginning January 2017, all data collection of the MMAS adherence scales must use the Morisky Widget"; "Dr. Morisky licenses all uses of the MMAS through the Morisky Widget. (NO EXCEPTIONS)."

23. The scoring and coding criteria of the Morisky Widget MMAS-8 and MMAS-4 — the conversion of the eighth item into weighted increments, the three-band classification, the derivation of the intentional and unintentional non-adherence scores, and the condition-, medication- and language-specific rendering architecture — are Plaintiff's trade secrets, disclosed only to licensees, only after training and certification, and only under written covenants that they can never be divulged in any publication, presentation or website without Plaintiff's written permission.

24. The three Morisky Widget MMAS-8 bands are high adherence, a total of 8; medium adherence, greater than 6 and less than 8; and low adherence, 6 or below. Because the eighth item contributes in quarter-point increments, a band written as two integers can only be produced by collapsing the eighth item before classification.

**C. The Retracted Validation**

25. The only published validation of the 2006 printed MMAS-8, Morisky DE et al., J Clin Hypertens 2008;10(5):348–354, claimed 93% sensitivity. Dr. Michael S. Ortiz recalculated it from the paper's own data at about 38% (95% CI 34–41%), so that 62 of every 100 patients who are not taking their medicine are recorded as taking it. (2022) 24 J. Clin. Hypertens. 1390–1391, DOI 10.1111/jch.14353 (Exhibit 4). On August 18, 2023 the Journal retracted the 2008

article. (2023) 25(9) J. Clin. Hypertens. 889, DOI 10.1111/jch.14718 (Exhibit 3). The Morisky Widget's three scores never rested on it.

**D. The MMAR Campaign**

26. From October 30, 2021, MMAR and Dr. Morisky announced on www.moriskyscale.com that the Morisky Widget was "phased-out," "defunct" and "DEAD," and Dr. Morisky wrote to Plaintiff's counterparties that MMAR was "the sole owner/licensor of the MMAS 4 and 8 scales." On April 21, 2022 their counsel wrote that neither Steven Trubow nor Plaintiff "has any lawful right to use or license the MMAS-4 Scale or the MMAS-8 Scale," and MMAR circulated that letter to Plaintiff's licensees on April 22, 2022. Those statements were false.

## THE DEFENDANTS' CONDUCT AND RELATED CONDUCT

**E. Genentech and GE HealthCare — ILLUMINATE**

27. *Study.* ILLUMINATE, NCT05949580 (MN44358), is a prospective observational cohort study of an estimated 500 patients with relapsing-remitting multiple sclerosis, sponsored by Roche with icometrix as collaborator, at seven sites in the United States, Germany and Spain, opened to enrollment on October 21, 2024 — fourteen months after the retraction. Its intervention, icompanion ms, is a participant application with a healthcare-provider portal. Its secondary outcome is "Change From Baseline in Medication Adherence, Assessed by the Morisky Medication Adherence Scale (MMAS)." (Exhibit 5.)

28. *License.* None of Genentech, Roche, icometrix or GE HealthCare holds any license from Plaintiff. The registration carries no citation, copyright notice, acknowledgement or permission statement.

29. *Conduct.* Genentech, Roche and icometrix reproduced the MMAS-8 and its scoring construction inside icompanion ms, administered it electronically, on information and belief also in German and Spanish, scored it there, and delivered the result to treating neurologists through the provider portal. The registry publishes the scoring: a sum "ranging between 0 and 8 points," "between 6 and 7" as medium

and "5 and less" as low. A score of 6 is low, not medium, and an integer total discards the eighth item.

30. *Device.* icometrix lists "icompanion" with the FDA under establishment registration No. 3013427569 as a Class I device, product code NXQ, "Reminder, Medication," 21 C.F.R. § 890.5050, with no premarket notification. The United States Agent of record is GE HealthCare Technologies, Inc., Waukesha, Wisconsin. In ILLUMINATE icompanion does not remind; it administers, scores and classifies the MMAS-8 and reports the result to the neurologist. The FDA Center for Devices and Radiological Health has docketed Plaintiff's allegation of regulatory misconduct as CPT2601952 (Exhibit 6).

31. *Knowledge and continued use.* By a registry update submitted July 17, 2026 and posted July 20, 2026, the study is recorded as SUSPENDED for "Transition of study Sponsor"; its subjects, sites and data remain in place. On July 20, 2026 Genentech's counsel wrote to Plaintiff for Genentech and Roche. On September 10, 2025 GE HealthCare announced that it had agreed to acquire icometrix; on October 15, 2026 icometrix's General Counsel acknowledged Plaintiff's October 12, 2026 notice of these claims from a gehealthcare.com address. On information and belief GE HealthCare owns and controls icompanion ms, its source code and its participant data, and is liable directly and as icometrix's successor in interest.

32. *Genentech's position.* By email sent at 5:26 PM on October 21, 2026, Genentech's counsel, Alex Reese, sent Plaintiff's managing member, Steven Trubow, a letter on behalf of Genentech (Exhibit 14). The letter called Plaintiff's claims "frivolous"; wrote that "the MMAS-8 scale, MMAS-4 scale, and any code relating to those scoring systems are not copyrightable, as a court determined just last year"; wrote that Plaintiff had been "told by a federal court just last year that its claims are legally barred"; and wrote that the copyright asserted is not enforceable, "which a court has found it is not." The letter threatened that if "you or the entity

you apparently control, MMAS Research LLC, files suit against Genentech, we will seek sanctions and a designation that you are a vexatious litigant, which would prohibit you or MMAS Research from filing future lawsuits without prior judicial permission." Its footnote 1 called Plaintiff's communications that ILLUMINATE put patients at risk "harassing and highly inappropriate" and stated that "[t]hey will be evidence that Genentech relies on to establish your status as a vexatious litigant if MMAS Research files a lawsuit." The decision relied on is the order of June 25, 2025 in *Adherence v. CVS Pharmacy, Inc.*, No. 2:24-cv-1590 JCM (NJK) (D. Nev.) (Exhibit 13).

33. *What that decision was.* Plaintiff was not a party to that action. The plaintiff was "ADHERENCE," on information and belief the name under which MMAR does business (¶ 17). The Morisky Widget, Registration No. TX 8-816-517, was not before that court, and the order does not mention the Morisky Widget, Plaintiff or Registration No. TX 8-816-517. The order states the question as "whether the forms qualify for copyright protection" and holds that the plaintiff's "forms are primarily designed to record information." No court has held Registration No. TX 8-816-517 invalid or unenforceable. The Ninth Circuit has held that Plaintiff "remains the registered owner of the Morisky Widget" (¶ 20).

34. *Notice of the error, and the response.* On October 21, 2026, Plaintiff told Genentech's counsel in writing that Plaintiff was not a party to the Nevada action and that the Morisky Widget was not before that court, enclosing the Nevada order, the Ninth Circuit memorandum, a draft complaint pleading CPT2601952, and Plaintiff's allegation to the FDA Center for Devices and Radiological Health. At 1:19 PM on October 22, 2026, Mr. Reese wrote to Mr. Trubow, copying Plaintiff's counsel of record (Exhibit 14): "Genentech is not willing to spend the time and resources to refute the baseless arguments in your many lengthy emails. Suffice it to say that we disagree with what you have written below, and that Genentech will take all steps to recover its fees and seek sanctions against you and MMAS Research if

you proceed with litigation. This includes seeking a vexatious litigant designation and a request that you and MMAS Research be barred from filing any lawsuit in the future without prior approval from a court." He added: "Genentech does not agree to waive proper service." Genentech continued to stand on a decision about another party's paper forms, with written notice that it did not concern Plaintiff or the Morisky Widget.

35. *Intimidation.* On information and belief, Genentech's counsel made these threats to intimidate Plaintiff, Mr. Trubow and Plaintiff's counsel of record into not filing this action, and not to give notice of any sanctionable conduct. Genentech declined to answer the merits, and neither communication identifies any specific conduct said to violate Federal Rule of Civil Procedure 11(b). The order threatened would bar Plaintiff and Mr. Trubow from filing "any lawsuit in the future," against anyone, not only against Genentech. No court has found any filing by Plaintiff frivolous or harassing; the only prior decision Genentech's counsel cited was the Nevada order in an action to which Plaintiff was not a party. The threats were aimed at Mr. Trubow personally, although Plaintiff, a limited liability company appearing through counsel, is the party bringing this action. Both communications were sent to Plaintiff's counsel of record. Genentech refused to waive service, so that Plaintiff must serve it formally.

36. *The standards of professional conduct.* Under Local Rule 83-3.1.2, every attorney practicing before this Court must comply with the California Rules of Professional Conduct, and the Model Rules of Professional Conduct of the American Bar Association may be considered as guidance. On information and belief, the communications described in ¶¶ 32 and 34 engage the following standards. (a) California Rule 4.1(a) prohibits a lawyer, in the course of representing a client, from knowingly making "a false statement of material fact or law to a third person." The statement that a federal court had told Plaintiff its claims are legally barred concerned an action to which Plaintiff was not a party (¶ 33), and after written

notice of that fact Genentech's counsel did not withdraw it (¶ 34). (b) California Rule 4.2(a) provides that "[i]n representing a client, a lawyer shall not communicate directly or indirectly about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." For a represented organization the rule reaches its officers, directors, partners and managing agents (Rule 4.2(b)(1)), and it "applies even though the represented person initiates or consents to the communication" (Rule 4.2, Comment [1]). Both communications were addressed to Mr. Trubow, Plaintiff's managing member, while Plaintiff's counsel of record was only copied. (c) California Rule 8.4(c) and (d) make it professional misconduct to "engage in conduct involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation" or to "engage in conduct that is prejudicial to the administration of justice." (d) ABA Model Rule 4.4(a), considered as guidance, provides that a lawyer "shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person." Mr. Trubow is not a party to this action, and Genentech declined to answer the merits.

**F. Chiesi Germany and GKM — TriOptimize**

37. *License.* By the perpetual Morisky Widget MMAS-8 License Agreement of September 2, 2017 (the "Chiesi License"), signed for Chiesi Germany by its Medical Director Dr. Raimund Hövelmann, Chiesi Germany paid €14,500 for a global license, training and certification in Hamburg, and 3,000 tests on the Morisky Widget. Section I.A bars transfer, disclosure or sub-license without written permission; Section I.E requires that "all scoring and coding must be done by the Morisky Widget or the Morisky Widget API"; Section II.C permits sub-licensees in Germany only with Plaintiff's written agreement and paid training; Section II.D permits a sub-license to affiliates outside Germany only "with a signed Addendum to this license by both the Licensor and the Licensee"; Section II.E makes the coding and scoring criteria trade secrets; Section II.G requires the Appendix 1 requirements

in every publication; Section III.A requires submission of every manuscript. Plaintiff trained and certified Chiesi Germany personnel in Hamburg on August 18, 2017.

38. *Study.* TriOptimize, DRKS00013938, is a non-interventional study of chronic obstructive pulmonary disease patients on Chiesi's Trimbow inhaler, sponsored and funded by Chiesi Germany, run from November 17, 2017 to April 6, 2020 at 148 sites, enrolling 2,763 patients seen three times each. Its registered objective includes "the reasons for non-adherence."

39. *Conduct.* Chiesi Germany placed its contract research organization GKM inside its Morisky Widget organization: accounts for GKM's Claudia Rokitta were created on September 11 and 12, 2017 and scored 197 MMAS-8 tests. GKM was never sub-licensed, trained or certified. In all, 235 MMAS-8 tests were scored in the Morisky Widget for a study of 2,763 patients. On May 21, 2019 Dr. Hövelmann wrote that Chiesi Germany's administrator "has started the coding of MMAS and tried to upload the data in the widget" — Chiesi Germany was coding the MMAS-8 data itself, outside the Morisky Widget. Chiesi Germany registered TriOptimize retrospectively on December 28, 2021, naming no adherence instrument, and published it in Int J Chron Obstruct Pulmon Dis 2022;17:3019–3031, analyzed and drafted by GKM, without mentioning the MMAS-8. The manuscript was not submitted to Plaintiff, and the MMAS-8 results have never been reported.

40. *Knowledge.* On May 14, 2018 Plaintiff told Chiesi Germany in writing that GKM's administration breached the Chiesi License. On April 20, 2020 Plaintiff withdrew permission for Chiesi Germany to use the Morisky Widget MMAS-8. Asked twice in writing who had made her a user and administrator and how many tests she had scored, Ms. Rokitta refused to answer; on April 24, 2020 Plaintiff notified GKM and its Chief Executive Officer in writing.

## G. The Chiesi Affiliates — CONTROL (Chiesi Poland)

41. *Knowledge.* On September 6, 2017 Chiesi Poland's Medical Director,

Dr. Tomasz Dębowski, wrote that Chiesi Poland had used the Morisky scale "3 times in 2400 patients" in CONTROL "without a formal license." Plaintiff answered the same day that a Chiesi affiliate outside Germany could obtain a license only by a signed Addendum, and confirmed it in writing on September 10, 2017, copying Chiesi Germany.

42. *License.* By the Addendum executed October 20 and 27, 2017 (the "Chiesi Poland Addendum"), Chiesi Poland took a retroactive sub-license for €7,500, with training and certification in Warsaw on October 9, 2017. It permits publication of past MMAS results only after the manuscript is submitted to Plaintiff, and its release reaches only use before October 2017.

43. *Conduct.* Chiesi Poland published CONTROL as Dębowski T et al., Pulm Pharmacol Ther 2024;84:102272, reporting the MMAS-4 administered to 2,179 asthma patients at each of three visits — approximately 6,537 administrations — none scored or coded in the Morisky Widget. Table 2 reproduces all four Morisky Widget MMAS-4 items under the MMAS-4 designation with no Appendix 1 acknowledgment, copyright notice or citation. The manuscript was never submitted to Plaintiff.

**H. The Chiesi Affiliates — NEXT-step (Chiesi Hellas)**

44. *Conduct.* Chiesi Hellas sponsored NEXT-step, a study of 661 asthma patients at 62 Greek sites, published as Bakakos P et al., J Pers Med 2022;12(2):146, on January 22, 2022. It administered the "four-item Morisky Scale" — the Morisky Widget MMAS-4 — up to approximately 1,983 times, scored it outside the Morisky Widget, and published its scoring and coding: 0 high, 1 to 2 intermediate, 3 to 4 low. It carries no permission, license statement or copyright notice. CONTROL cites NEXT-step as its reference [10].

45. *License and knowledge.* Chiesi Hellas never executed an Addendum under Section II.D and holds no license. The Chiesi group knew from September 2017 that every affiliate outside Germany required one.

**I. Berlin-Chemie — MyTherapy App Evaluation**

46. *License.* By the Morisky Widget MMAS-8 License Agreement effective February 14, 2017 (the “Berlin-Chemie License”), Berlin-Chemie paid US$3,050 for a perpetual Morisky Widget license, a German translation and 1,050 MMAS-8 tests for the MyTherapy App Evaluation MT-EV-2017-01 in type 2 diabetes. Section I.A bars disclosure or distribution without written permission; Section II.B permits administration, scoring and reporting “by the Morisky Widget” and allows suspension for “paper and pencil, manual MMAS forms or another electronic derivative”; Section II.C bars transfer outside the licensed organization and provides that the coding and scoring criteria “can NEVER be divulged in any publication”; Section II.E requires the Appendix 1 legend and citations; Section III.A requires submission of all manuscripts.

47. *Conduct.* Its Morisky Widget accounts were opened for personnel of IGES Institut GmbH and CSG Clinische Studien Gesellschaft mbH, separate organizations; ninety-one MMAS-8 tests were scored in the Berlin-Chemie organization, all on an IGES account. Berlin-Chemie published the study as Ohde T et al., Diabetes Stoffw Herz 2019;28(1):9–15, reporting that 200 patients, taking on average 6.1 long-term medicines, completed a Morisky-8 questionnaire whose data were transferred “durch den Arzt in das elektronische Datenerfassungssystem,” and classifying them low (< 6) 110, medium (6 to < 8) 53 and high (8) 37. It publishes the cut-points, has no Appendix 1 legend, copyright notice or reference to Plaintiff, and was not submitted to Plaintiff.

**J. Elpen — COMPLETE, AHEAD and ESTIA**

48. *License.* By the perpetual Morisky Widget MMAS-8 License of May 7, 2018, retroactive to April 17, 2016 (the “Elpen License”), Elpen paid 8,000 euros. Plaintiff trained and certified Elpen in Athens on June 22, 2018 and issued twelve accounts. Ownership ¶¶E and F require scoring and coding of all tests, including those collected “though a third-party electronic questionnaire or the eCRF,” through

the Morisky Widget; Terms of Use ¶¶C and L and Appendix I require the acknowledgment "A license agreement is available from: MMAS Research LLC"; III.D requires submission of all manuscripts.

49. *Conduct.* Elpen sponsored and published COMPLETE (June 27, 2022; 716 asthma patients; over 1,400 MMAS-8 administrations) and AHEAD (June 20, 2024; NCT03299673; 1,432 MMAS-8 administrations), and sponsors ESTIA (NCT06117722), whose registered outcome is the MMAS-8. Between June 22, 2018 and April 15, 2025 Elpen scored fourteen MMAS tests in the Morisky Widget. No manuscript was submitted to Plaintiff.

50. *Knowing alteration.* COMPLETE printed the Appendix I acknowledgment naming MMAS Research LLC. AHEAD, after MMAR's April 22, 2022 circulation (¶ 26), printed the same text with the licensor replaced: "A license agreement is available from MMAR, LLC., www.moriskyscale.com."

**K. BMS — SIMPLICITY**

51. *Study.* SIMPLICITY (NCT01244750, CA180-330), sponsored by BMS with ICON Clinical Research as collaborator, is an observational study of 1,494 patients with chronic myeloid leukemia on dasatinib, imatinib or nilotinib, run from December 2, 2010 to January 8, 2020. Its registered outcomes include "[t]he adherence to treatment" by the "Morisky Medication Adherence Scale - 8 Items," every six months for five years. (Exhibit 7.)

52. *Application.* On October 22, 2018 BMS applied for a Morisky Widget license for SIMPLICITY, naming ICON as the third party that would administer the MMAS-8, 1,494 tests, US-Spanish translation, and administration ten times per patient. To the question "Have you ever used the Morisky Medication Adherence Scales?" BMS answered "No." It asked to begin testing at once, before training.

53. *License.* By the Morisky Widget MMAS-8 License Agreement of February 21, 2019 (the "BMS License"), signed for BMS by Richard Boucher, BMS agreed to pay US$22,500 for a perpetual license, training and certification in

Princeton, and 3,000 tests for chronic myeloid leukemia with imatinib, dasatinib and nilotinib. Section 1 permits paper administration, but "all MMAS™ tests must be scored and coded, without exception, through the Morisky Widget™," including tests administered "through a third-party electronic questionnaire"; only personnel trained and certified by Plaintiff may use the Morisky Widget; Section 2(a) makes the coding and scoring criteria trade secrets; Section 2(c) requires the Appendix 1 guidelines in all publications containing MMAS results; Section 2(h) awards attorney's fees to the prevailing party. (Exhibit 8.)

54. *Conduct.* SIMPLICITY administered the MMAS-8 every six months until January 8, 2020. On information and belief, BMS and ICON scored and coded those MMAS-8 tests outside the Morisky Widget, and ICON personnel administering them were not trained and certified by Plaintiff.

**L. Servier — the 2016 Servier License, the Servier License, Life and MODUS VIVENDI**

55. *The 2016 Servier License.* By the Morisky License Contract and Copyright Agreement signed for Les Laboratoires Servier by Dr Harpreet Lhoste on October 18, 2016 (the "2016 Servier License"), issued in Plaintiff's licensing program, Servier licensed 6,000 MMAS-8 administrations and a validated German translation for its ADHERENCE survey of hypertensive patients, and paid the fee into Los Angeles (Exhibit 9). Clause 2 makes the MMAS-8 coding and scoring criteria trade secrets that "cannot be divulged in any publication or report." Clause 5 provides: "Licensee agrees to the jurisdiction in and venue for any infringement (if any at all) will take place in Los Angeles." On March 1, 2017 those activities passed to Servier. By the Infringement Authorization of January 25, 2021, Dr. Morisky authorized Plaintiff to pursue, settle and litigate "contract claims related to licenses issued to use the MMAS-4, MMAS-8 or Morisky Widget, accruing on or before December 3, 2020." (Exhibit 10.)

56. *Knowledge.* On September 17, 2017 Servier asked Dr. Morisky to

approve a local French and Dutch MMAS-8 translation already printed into its Belgian case report forms. In December 2018 a University of Leipzig article from a study run under the 2016 Servier License published MMAS-8 scoring and coding. On January 17, 2019 Plaintiff notified Servier, quoting Clauses 2 and 5, that absent an Addendum it would sue "in the Los Angeles California Federal Courts as you agreed in the license." On January 21, 2019 Servier's Head of Global Medical Affairs Cardiovascular, Dr. Jacques Thevenon, answered that he wished to manage it "with a cooperative fashion"; on January 25, 2019 he wrote that Servier "would like to proceed with an Addendum"; and on February 26, 2019 he sent it to Servier's legal department. The Addendum of March 19, 2019 is, on its face, an Addendum to the 2016 Servier License with MMAS Research LLC as Licensor.

57. *The Servier License.* By the Perpetual Morisky Widget MMAS License dated July 1, 2019 (the "Servier License"), issued through Plaintiff's French affiliate SAS MMAS Research France and signed for Servier by Dr. Thevenon on September 4, 2019, Servier paid €25,000 for a perpetual Morisky Widget license and training and certification, after which Plaintiff would grant "Servier in France or Licensee personnel and Servier in Russia or Licensee personnel their own Widget and 3000 complimentary MMAS tests" (Exhibit 11). Every MMAS-8 assessment must be scored and coded in the Morisky Widget by trained and certified personnel; Section 2.a makes the coding and scoring criteria trade secrets; Section 2.c requires the Appendix 1 attribution and copyright notice in every publication; Section 2.e reserves inspection of results in cases of misconduct.

58. *Certification.* On July 1, 2019, at Servier's own offices in Suresnes, Plaintiff trained and certified seven Servier personnel, French and Russian, provisioned across nine Morisky Widget accounts under "Servier Global Medical Affairs" and "Servier Russia." Thirty MMAS-8 assessments in all have been performed in the two accounts, against 6,000 allocated. MMAR's own CR 2A Agreement dated December 4, 2020, signed for MMAR by Philip Morisky, lists

Servier on its attached schedule of "Morisky Widget Licensees" (Exhibit 12).

59. *Life.* Servier Pharma funded and sponsored a 2022 Romanian study of 1,267 chronic venous disease patients, 1,200 analyzed, with the MMAS-8 at enrollment and at eight weeks — approximately 2,400 administrations — published as Brănișteanu et al., Life 2025;15(3):377, on February 27, 2025, with two Servier Pharma employees as authors and data that "belong to Servier, as the sponsor." It was not scored in the Morisky Widget: it reports flat sums with cohort means of 6.2 ± 1.9 and 6.7 ± 1.7, defines high adherence as "MMAS-8 score = 8" in the text and "MMAS-8 score > 8" in Table 4, and says a "scoring algorithm can be obtained from the developer [11]," reference 11 being a blood-pressure trial in Nepal.

60. *MMAR's permission.* The article omits the Appendix 1 attribution and copyright notice and states instead: "Use of the ©MMAS is protected by US copyright laws. Permission for use was obtained. MMAS© at www.adherence.cc, accessed on 11 February 2022." That permission was sold by MMAR, trading as Adherence, while the Servier License was in force.

61. *MODUS VIVENDI.* Lopatin and Petrova, Cardiol Ther 2022;11:93–111, funded by Servier, with Petrova of Servier Global Medical Affairs and "the assistance of Yuriy Burtsev from Servier," whom Plaintiff had certified, assessed 1,939 angina patients with "a non-validated questionnaire in Russian comprising six questions where the answer of 'no' to all questions indicated good adherence, 'yes' to one or two questions indicated moderate adherence, and 'yes' to three or more questions indicated nonadherence" — the Morisky architecture of reverse-worded items, summed affirmatives and three bands, adapted, unattributed and uncited.

62. *PRIDE, TRICOLOR and TRIPTYCH.* PRIDE (Adv Ther 2023;40:2725–2740; 504 patients), sponsored by Servier Russia, is co-authored by Yuriy Burtsev; the TRICOLOR subanalysis (NCT03722524; 1,247 patients) is co-authored by Natalya Logunova, whom Plaintiff also certified; TRIPTYCH (NCT06259175; 396 patients), sponsored by Servier Russia, has adherence in its

official title. None names an adherence instrument. On information and belief their adherence assessments were made with MMAS-8-derived instruments or the MODUS VIVENDI adaptation, outside the Morisky Widget.

63. *Demand.* On April 20, 2025 Plaintiff wrote to the Life authors and to Servier's Eric Langhamer, Monique Verrecchia and Anne Menegol that Servier had agreed that all MMAS-8 tests had to be scored in the Morisky Widget, and asked to bring the Servier License and the article into compliance. Servier did not answer. On September 13, 2026 Plaintiff sent a further notice; Servier's only reply was an acknowledgment.

**FIRST CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(Against Defendant Bristol-Myers Squibb Company)**

64. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs.

65. The BMS License is a valid and enforceable contract, and Plaintiff performed all of its obligations (¶ 53).

66. BMS breached Section 1 by scoring and coding SIMPLICITY MMAS-8 tests outside the Morisky Widget and by permitting their administration by personnel not trained and certified by Plaintiff (¶ 54).

67. Plaintiff has been damaged in an amount to be proven at trial and is entitled to specific performance and to its attorney's fees and costs under Section 2(h).

**SECOND CLAIM FOR RELIEF**

**COPYRIGHT INFRINGEMENT, 17 U.S.C. §§ 106, 501**

**(Against Defendants Genentech, GE HealthCare, BMS and Does 1–10)**

68. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs.

69. Plaintiff owns a valid copyright in the Morisky Widget, Registration

No. TX 8-816-517, a software work in whose deposit the MMAS-8, its translations and its scoring and coding construction are embodied (¶¶ 20, 21).

70. Each Defendant copied protected expression without license: Genentech, with Roche and icometrix, and GE HealthCare as icometrix's owner and successor, by reproducing the MMAS-8 and its scoring construction in icompanion ms and distributing it (¶¶ 29–31); and BMS, on information and belief, by reproducing the MMAS-8 in SIMPLICITY outside the Morisky Widget to which its license confined it (¶ 54).

71. The infringement was willful. Plaintiff is entitled to actual damages and profits, or statutory damages under 17 U.S.C. § 504(c) of up to $150,000 per work for willful infringement, injunctive relief under § 502, impoundment under § 503, and costs and fees under § 505.

**THIRD CLAIM FOR RELIEF**

**FALSE, REMOVED AND ALTERED COPYRIGHT MANAGEMENT INFORMATION, 17 U.S.C. § 1202**

**(Against Defendants Genentech, GE HealthCare and Does 1–10)**

72. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs.

73. A copyright notice, the name of the copyright owner, and the terms and conditions for use of a work are copyright management information under 17 U.S.C. § 1202(c).

74. Genentech, with Roche and icometrix, and GE HealthCare as icometrix's owner and successor, on information and belief removed the legend and notice that accompany every authorized Morisky Widget MMAS-8 test when they reproduced it in icompanion ms, in violation of § 1202(b) (¶¶ 28–29).

75. Plaintiff is entitled to actual damages and profits, or statutory damages under 17 U.S.C. § 1203(c)(3)(B) of $2,500 to $25,000 for each violation, costs, attorneys' fees and injunctive relief.

**FOURTH CLAIM FOR RELIEF**

**MISAPPROPRIATION OF TRADE SECRETS, DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**

**(Against Defendants Genentech, GE HealthCare, BMS and Does 1–10)**

76. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs.

77. The scoring and coding criteria and rendering architecture of the Morisky Widget MMAS-8 and MMAS-4 are trade secrets under 18 U.S.C. § 1839(3), related to products used in interstate and foreign commerce, deriving independent economic value from not being generally known, and protected by reasonable measures (¶ 23).

78. "One party can misappropriate another's trade secret by either acquisition, disclosure, or use." *Compulife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020). A protectable trade secret may be distilled from publicly available parts; "use of any substantial portion of the secret is sufficient," so a defective implementation is still use; and use-misappropriation of information acquired by improper means requires no duty external to the statute. *Id.*

79. BMS acquired the trade secrets under its license and, on information and belief, used them outside the Morisky Widget (¶ 54). Genentech and GE HealthCare acquired, used or exploited them outside any license and, with Roche and icometrix, disclosed them in the registry (¶ 29), each knowing or having reason to know that they derived from a person who owed Plaintiff a duty of secrecy.

80. The misappropriation was willful and malicious. Plaintiff is entitled to damages for actual loss and unjust enrichment, or a reasonable royalty, exemplary damages of up to two times that amount, attorneys' fees and injunctive relief under 18 U.S.C. § 1836(b)(3).

**FIFTH CLAIM FOR RELIEF**

**DECLARATORY RELIEF, 28 U.S.C. §§ 2201–2202**

**(Against All Defendants)**

81. Plaintiff realleges and incorporates by reference each allegation contained in the preceding paragraphs.

82. An actual controversy exists between Plaintiff and each Defendant.

83. Plaintiff seeks a declaration that (a) Plaintiff owns the Morisky Widget, Registration No. TX 8-816-517; (b) the BMS License remains in full force and binds BMS; and (c) no Defendant holds any license from Plaintiff for the conduct alleged other than as stated in (b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants as follows:

A. For actual damages according to proof, and for each Defendant's profits attributable to the acts complained of;

B. At Plaintiff's election, for statutory damages under 17 U.S.C. § 504(c), including enhanced statutory damages for willful infringement, and under 17 U.S.C. § 1203(c)(3)(B) for each violation;

C. For damages, unjust enrichment or a reasonable royalty, and exemplary damages, under 18 U.S.C. § 1836(b)(3);

D. For specific performance of the scoring, coding and submission obligations of the BMS License;

E. For a declaration in the terms sought in the Fifth Claim for Relief;

F. For preliminary and permanent injunctive relief requiring each Defendant to produce the item-level MMAS-8 and MMAS-4 responses of its studies, de-identified under the studies' own participant codes, for re-scoring and re-coding in the Morisky Widget, resolved to each patient's actual regimen with each medicine as its own referent;

requiring the classification of every participant into the three MMAS-8 bands and the notification of each participant's treating clinician; and requiring correction of each publication and registry record;

G. For preliminary and permanent injunctive relief restraining each Defendant from any further reproduction, administration, scoring, coding, publication or distribution of the MMAS-8 or MMAS-4 outside the Morisky Widget;

H. For impoundment under 17 U.S.C. §§ 503 and 1203(b)(2);

I. For costs of suit;

J. For attorneys' fees under 17 U.S.C. §§ 505 and 1203(b)(5), 18 U.S.C. § 1836(b)(3)(D) and Section 2(h) of the BMS License;

K. For prejudgment and post-judgment interest at the maximum rate allowed by law; and

L. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

**HANKIN PATENT LAW, APC**

Dated: October 23, 2026

By: /Marc E. Hankin/

Marc E. Hankin, Esq.
Attorneys for Plaintiff,
**MMAS RESEARCH LLC**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable in this action.

**HANKIN PATENT LAW, APC**

Dated: October 23, 2026

By: /Marc E. Hankin/

Marc E. Hankin, Esq.
Attorneys for Plaintiff,
**MMAS RESEARCH LLC**